JAMES L. WALL, PLAINTIFF, v. HARRY L. DEMBERGER, DEFENDANT, THIRD-PARTY PLAINTIFF, v. CHARLES FARENKOPF AND THOMAS J. TOMASCO, THIRD-PARTY DEFENDANTS.

Camden County Court
Law Division

Decided June 14, 1963.

*Mr. William M. Rosenblatt* for the third-party plaintiff (*Kisselman, Devine, Deighan & Montano,* attorneys).

*Mr. Alex. P. Schueneman, III,* for the third-party defendants.

BROWN, R. C., J. C. C. This matter comes before the court on a motion on behalf of the third-party defendant Thomas J. Tomasco to set aside service of process which had been effected through service on the Director of the Division of Motor Vehicles pursuant to the provisions set forth in *R. S.* 39:7–1 *et seq.* relating to service of process upon nonresidents.

The essential facts necessary to decide this motion are not disputed. On May 8, 1962, at approximately 5 P. M., a four-car collision occurred at or near the Passyunk Avenue entrance to an approach to the Walt Whitman Bridge, in Philadelphia, Pa. This bridge connects Philadelphia with Gloucester City, N. J.

As a result of the accident, James L. Wall, of Bellmawr, N. J., brought suit in Camden County Court against Harry L. Demberger of Stratford, also Camden County, New Jersey. Subsequently, defendant Demberger filed a third-party complaint against the defendants Charles Farenkopf and Thomas J. Tomasco seeking contribution under the New Jersey Joint Tortfeasors Act. Third-party defendant Tomasco resides at 2337 South Rosewood Street, Philadelphia.

The Passyunk Avenue approach, the situs of the accident, is on the Pennsylvania side of the Delaware River at a point

approximately 1½ miles west of the toll gate for the bridge. The toll gate is located at the base of the bridge on the Pennsylvania side, approximately four blocks west of the westerly shore of the river.

Since service on out-of-state residents is a statutory remedy, the provisions of the statute must be satisfied before the service of process is valid and binding. *N. J. S. A.* 39:7-2 provides, *inter alia*, that the Director of Motor Vehicles is deemed to be the agent for service of process on any person who operates a motor vehicle "upon any public highway *of* this State" in actions "arising out of or by reason of any accident or collision occurring *within* this State." (Emphasis added)

The fact that the third-party defendant is domiciled in Pennsylvania and the accident occurred over 1½ miles west of the western shoreline of the Delaware River would ordinarily dispose in the negative the issue of service of process through the nonresident statute, since *N. J. S. A.* 39:7-2 requires that the accident occur "within this state." Counsel for the third-party plaintiff ably argues, however, that the State of New Jersey and the Commonwealth of Pennsylvania have merged a portion of their sovereignty by the creation of the Delaware River Port Authority, which operates and maintains the bridge and its approaches pursuant to *R. S.* 32:3-1 *et seq.*

*N. J. S. A.* 32:3-2 provides that the bridge and its approaches are *owned jointly* by the two states. It is contended by the third-party plaintiff, therefore, that the jurisdiction of New Jersey extends into the territory of Pennsylvania, coextensive with the bridge and its approaches, and thereby these roadways become by implication and incorporation "public highways of this state" so that the requirements of *N. J. S. A.* 39:7-2 are satisfied. Thus, counsel argues that an overlapping of sovereignty has occurred.

There is no dispute over the validity of the compact between the State of New Jersey and the Commonwealth of Pennsylvania, which, with the approval of the United States

Congress, established the Delaware River Joint Commission, subsequently changed to the Delaware River Port Authority.

█ The narrow question before this court, therefore, is whether or not an accident which occurs at the Passayunk Avenue approach to the Walt Whitman Bridge in Philadelphia is one which occurs "within this state," so that service of process through the "service of process upon nonresidents" statute, *R. S.* 39:7–1 *et seq.,* is valid and binding.

It is fundamental that service through such a statute is in derogation of the common law and must be closely scrutinized in order to fulfill the federal due process of law requirements.

The issue at bar is not specifically covered either under *R. S.* 39:7–1 *et seq.,* relating to nonresident service of process, or under *R. S.* 32:3–1 *et seq.,* relating to the creation and power of the Delaware River Port Authority. Nor do any of the cases interpreting either of these statutes solve the problem explicitly.

Historically, the original 13 American colonies, and subsequently the states of the United States of America, have been reluctant to surrender any more sovereignty than the exigencies of a particular situation require. This reluctance to surrender sovereignty is exemplified in the Tenth Amendment to the United States Constitution: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

It would seem most reasonable, therefore, that if New Jersey had desired to construe the bridge approach on the Pennsylvania side of the Walt Whitman Bridge as "public highways of this state" for the purpose of the nonresident statute for service of process, it would have explicitly stated so, either under *R. S.* 39:7–1 *et seq.,* or *R. S.* 32:3–1 *et seq.* The fact that such express legislation pertaining to service of process was not established demonstrates the withholding of such sovereignty from the Port Authority and the retention of the inherent sovereignty to the State.

Assuming, *arguendo*, that the bridge approach on the Pennsylvania side could be construed as a highway "of the State of New Jersey," *N. J. S. A.* 39:7–2 requires that the accident or collision "occur *within* this State." (Emphasis added) No cogent argument could possibly be made that an accident which occurs over 1½ miles west of the western shore of the Delaware River is "within" the State of New Jersey.

It is argued that in criminal causes, both states exercise concurrent jurisdiction over the bridge and its approaches, and therefore the exercise of concurrent civil jurisdiction would not offend either state. The fact is, however, that the concurrent exercise of criminal jurisdiction is explicitly granted by *N. J. S. A.* 32:4–6 and is part and parcel of the interstate compact. In light of this specific grant of power it would seem most probable that if both states intended to extend this jurisdictional power to civil causes, it would have been expressly provided for in the compact.

Unfortunately, the appellate cases cited by both counsel do not pertain to an interpretation of the New Jersey service of process statute for nonresidents, nor do they pertain to any interpretation of the interstate compact between New Jersey and Pennsylvania which established the Delaware River Port Authority.

The third-party plaintiff relies heavily upon the case of *Schueren v. Querner Truck Lines, Inc.*, 22 Ill. App. 2d 183, 159 N. E. 2d 835 (*Ill. App. Ct.* 1959). In this case the accident in question occurred on the Missouri side of a bridge spanning the Mississippi River between Illinois and Missouri. Service of process was obtained through the Illinois nonresident service of process statute. A review of the facts indicates, however, that the bridge in its entirety was owned by the City of Madison, Illinois, and an act of Congress conferred concurrent jurisdiction on both states. This, of course, is clearly distinguishable from the case at hand, in both the ownership and maintenance of the highway upon which the accident occurred and the situs of the accident. A more

analogous situation to ours occurred in the case of *Clarke v. Ackerman*, 243 *App. Div.* 446, 278 *N. Y. S.* 75 (*App. Div.* 1935). There an accident occurred on the New Jersey side of the George Washington Bridge. The court, after reviewing the broad grant of authority concerning the jurisdiction in the Hudson River, held that this did not permit nonresident service through the Director of Motor Vehicles.

In a lower court opinion, the converse of the present situation was faced and passed upon by the Pennsylvania courts. In *Shulman, Inc. v. Perski*, 24 *Pa. Dist. Co. R.* 118 (*C. P.* 1960), service upon a New Jersey resident was made pursuant to the Pennsylvania Nonresident Motorist Act in an action instituted in the Philadelphia Court of Common Pleas. The action which gave rise to this suit occurred on the Camden side of the Camden-Philadelphia Bridge, which is also maintained and operated by the Delaware River Port Authority. There the defendant's vehicle was alleged to have been approaching the bridge from the Camden side. The defendant filed preliminary objections regarding jurisdiction. Burch, J., held that the service pursuant to the Pennsylvania Nonresident Motorist Act was valid, stating:

"In 1783 Pennsylvania and New Jersey appointed commissioners for the purposes of settling jurisdictions of the Delaware River and entered into a compact which provided that the Delaware River in the whole length and breadth thereof shall be a common highway and that each state shall enjoy and exercise a concurrent jurisdiction within and upon the water between the shores of said river: Act of September 20, 1783, 2 *Sm. L.* 77, 71 *PS Sec.* 1801, *et seq.*

In *Neal vs. Commonwealth*, 17 *S. & R.* 67 (1827), it was held in an opinion by Chief Justice Gibson that the jurisdiction of the City of Philadelphia extends to the New Jersey shore.

The bridges connecting Pennsylvania and New Jersey were constructed or acquired by joint action of Pennsylvania and New Jersey under legislation enacted by both States (Act of May 8, 1919, *P. L.* 148, as amended), and the word 'bridge' includes not only the actual bridge but the approaches thereto. The Commonwealth of Pennsylvania and the State of New Jersey entered into a compact creating the Delaware River Joint Commission to operate the bridge connecting Philadelphia and Camden now known as the Benjamin Franklin Bridge: Act of June 12, 1931, *P. L.* 575, 36 *P. S. Sec.* 3503. The agreement sets forth in the preamble that the Common-

wealth of Pennsylvania and the State of New Jersey are the joint owners of the bridge.

Although the two States have delegated to an independent commission the power to operate the bridge, the bridge is the joint territory of both States. The ownership of one State cannot be severed from the ownership of the other State.

We hold that defendant was operating her automobile within this Commonwealth at the time of the accident and defendant's preliminary objections raising questions of jurisdiction are overruled."

The *Shulman* case gives this court cause for just concern, since mutuality of remedy and jurisdiction is a goal to be achieved in matters of this kind. Since the Courts of Common Pleas of Pennsylvania are not appellate courts, the case presents a limited guidepost as to how a Pennsylvania appellate court would interpret the same statute in light of the basic reluctance of any state to relinquish jurisdictional sovereignty. Furthermore, the Pennsylvania courts were not interpreting the New Jersey statute, which requires the accident to occur "within this state."

It should also be noted that neither the Pennsylvania statute cited in *Shulman,* nor *R. S.* 39:7–1 *et seq.,* form any part of the interstate compact, nor are they reciprocal legislation. I doubt, therefore, that either legislature could confer jurisdiction upon its courts by such enactments.

This court is deeply concerned with the possibilities which would naturally flow from a ruling allowing the service herein. It is not impossible or even remotely improbable that the Delaware River Port Authority may in the future maintain and operate bridge approaches, highways, high-speed rail lines and other facilities, which may extend for many miles into New Jersey or Pennsylvania. If such powers were conferred on the Port Authority it would seem a *reductio ad absurdum* to say that an accident which occurred 50 or 100 miles into Pennsylvania would be an accident "within this state."

In the case *sub judice,* it was possible for the driver in each of the automobiles to leave from the approach before reaching the toll gate, since there is an exit between Passyunk Avenue and the bridge itself. Hence, if this court decided in favor of

the third party plaintiff on this motion, the State of New Jersey would have obtained *in personam* jurisdiction over persons not only not "within this state," but also not irrevocably committed to crossing the bridge leading to New Jersey.

Finally, it would seem only logical that if accidents such as this shall be construed to have occurred "in this state," then the New Jersey Unsatisfied Claim and Judgment Fund Law would apply. Many other legal ramifications, not intended by our Legislature might also occur.

Some serious doubt also arises as to whether or not due process of law would be violated in applying the New Jersey Joint Tortfeasors Act to this third-party defendant under the circumstances. This point, however, was not raised by either counsel and is unnecessary now to decide.

For the reasons stated above, the motion to set aside service of process under the nonresident service of process statute is granted.